111 A.2d 220 (1955)
Paul E. TIMMONS, Georgia P. Timmons, Plaintiffs,
v.
William S. CAMPBELL, Arthur Lee Pittard, Sheriff of Sussex County, Delema S. Hauger, Defendants.
Court of Chancery of Delaware, Sussex.
January 24, 1955.
Houston Wilson, Georgetown, for plaintiffs.
James M. Tunnell, Sr. (of Tunnell & Tunnell), Georgetown, for defendant, William S. Campbell.
Lawrence C. Elliott, Georgetown, for defendant, Delema S. Hauger.
Defendant, Arthur Lee Pittard, sheriff, did not appear.
SEITZ, Chancellor.
Plaintiffs seek to enjoin the enforcement of a Superior Court judgment of ejectment obtained against them by the defendant William S. Campbell. Alternatively, they *221 seek to recapture from the defendant Hauger, who sold them the property, the purchase price with interest and expenses, and they seek to recover from the defendant, Campbell, the value of improvements made on the property and taxes paid, with interest.
They seek to enjoin Campbell on the ground of equitable estoppel while they seek the recapture of the value of improvements, etc., on the ground of their good faith and Campbell's silence under circumstances tantamount to fraud. They seek to recapture the purchase price from the seller on the ground of fraud and misrepresentation.
On April 19, 1898, one Prettyman D. Smith (called the "testator") died leaving a will dated January 21, 1898. By his will he devised his 109 acre farm in Nanticoke Hundred, Sussex County to his son, William M. Smith (called "William" or "life tenant") for life and if his son "should die without lawful issue at the time of his death" then the farm was to go in fee to the defendant Campbell. He was the son of the testator's daughter. There is no specific language of devise in the event William M. Smith died with lawful issue surviving. Since the point is not here raised, I infer that all parties agree that the language created an implied remainder in such issue. I proceed on that premise.
The testator's son, William, had married Mary Williams on February 19, 1888. A child named Delema was born to William's wife but, based on events hereinafter mentioned, it must be assumed that she was born before the marriage and therefore was not lawful issue.
It is conceded that when the life tenant, William M. Smith, died on August 16, 1946, without lawful issue living at that time, the title to the farm thereupon vested in the defendant Campbell in fee. By that time Delema had become Mrs. Hauger by marriage and was living on the farm. After the life tenant's death, Mrs. Hauger continued in possession of the farm until November 10, 1947, when she "sold" it (except one acre)[1] to the plaintiffs. Subsequently, defendant Campbell through his attorney claimed that the farm was his because the life tenant died without leaving lawful issue. When his claim was resisted he brought an action of ejectment against the plaintiffs and the Superior Court determined that he was entitled to such a writ because Mrs. Hauger was not "lawful issue" of the life tenant. The Superior Court held that it had no jurisdiction to pass upon the defense of equitable estoppel therein raised. I am not called upon to decide the correctness of that decision. Immediately thereafter, plaintiffs instituted this action to obtain injunctive or, alternatively, monetary relief. Plaintiffs concede that the Superior Court decision as to "lawful issue" is binding in this action.
Since it is now conceded that the defendant Campbell became legally entitled to the fee in the farm upon the death of the life tenant on August 16, 1946, the problem of resolving plaintiffs' rights must here be considered in relation to events subsequent to that date but in the light of the prior knowledge of the participants. Plaintiffs say defendant Campbell's conduct after 1946 create an equitable estoppel against him. He denies it.
Before launching into this difficult case it is not amiss to say that the Court realizes the seriousness of interferences with land titles on the basis of equitable considerations. Also, the case was rendered even more difficult because many of the witnesses were handicapped by rather restricted educational opportunities and cerebration processes. These deficiencies are evident in their testimony.
I first consider what knowledge defendant Hauger had as to her status as lawful issue prior to the sale of the farm to plaintiffs in November 1947. This is done not to rejudge the legitimacy issue but to evaluate the actions of the parties in the light of what they believed in order to determine *222 the equitable estoppel issue. Plaintiffs and defendant Hauger contend that at all times up to and including the time of the sale of the farm Hauger assumed she was born during wedlock; that she was the lawful issue of her father; and that upon his death she became the rightful owner of the farm and had the right to sell it. Defendant Campbell contends that she knew of her status prior to the sale of the farm. Since this is of particular importance in evaluating the conduct of the parties after the death of the life tenant, let us see what the evidence reveals.
Hauger testified that she assumed that she was lawful issue. She also testified that she understood that her parents were married in February 1888 and that she was born in April 1888. The evidence shows that on May 6, 1927 in her application for a marriage license she gave April 20, 1888 as the date of her birth. The defendant Hauger also testified that when growing up she lived part of the time with her parents and part with each of her grandparents and that none of them ever mentioned that she was born out of wedlock. She testified that, as she expressed it, the will did not raise any question if she was her father's and mother's child. Since she believed she was, the will did not raise any question in her mind.
Defendant, Campbell, on the other hand, contends that Hauger knew or should have known that she was not lawful issue at the time she purported to sell the farm to plaintiffs. However, I have read the entire lengthy record with care, including the Superior Court transcripts,[2] and I conclude that the admissible evidence does not show that Hauger had or should have had knowledge that she was not lawful issue. I therefore conclude that at all times here material the defendant Hauger honestly believed she was lawful issue and the rightful owner of the farm after the death of the life tenant.
It is pertinent next to evaluate Campbell's knowledge during the period here being examined. Campbell himself testified that he knew from childhood that Hauger was illegitimate and therefore believed, as he had been told by his father, that the farm would be his upon the death of the life tenant. Campbell testified that some time in 1946, presumably after the life tenant's death, he was taken to the Register of Wills' office by one, Lank, and shown the will. Lank did not tell him what his rights were under the will but suggested that he consult an attorney. Lank testified that he got the impression that Campbell was going to try to get the farm. However, Campbell did not consult a lawyer at any time prior to the sale by Hauger.
I now proceed to consider the crucial developments against this background. In the fall of 1947, Hauger, believing she was the sole owner of the farm on which she was still living, agreed to sell it to one, Roberts, with the understanding that she could sell it to some one else if she received a higher offer before consummation. Not being familiar with the way property was sold and feeling that she needed an attorney she went to the office of Ralph Baker, Esquire, in Georgetown. She was accompanied by the prospective purchaser, Roberts. After some discussion and examination of the will, Mr. Baker became aware that Campbell's name was mentioned in the will with respect to the farm in question. He suggested that they contact Campbell and ask him to come to Mr. Baker's office personally to see if he claimed any interest or had any knowledge of other possible lawful issue. Hauger and Roberts contacted Campbell and a few hours later Campbell, Baker, Hauger and Roberts met in Mr. Baker's office. At that time Campbell was made aware that Mrs. Hauger was contemplating the sale of the property to Roberts. Baker requested Campbell to join in the deed. Campbell refused and there is substantial conflict as to what he said at that time. Campbell, I find, did not at any time during the conference mention Hauger's illegitimacy or claim or suggest that he had *223 any interest in the farm although he concedes that he felt at that very time that he did have an interest therein. All the other parties there present testified that Campbell stated, in substance, that he had no interest in the farm and that he would not thereafter claim any interest in the farm or give any one any trouble concerning it. Campbell flatly denied that he so stated.
Mr. Baker testified that at no time during the conference or prior to the sale of the property to plaintiffs which took place a few weeks later did he ever have any question about Hauger's not being the lawful issue of William Smith. He said that he assumed she was lawful issue in view of the dates given him. Defendant Campbell does not appear to attack the reasonableness of this assumption. It must also be noted that William Smith had no estate to administer and so there were no public records indicating who were supposedly his heirs at law and next of kin. Baker claimed that he was interested in talking with Campbell to see whether he claimed any interest and he was also interested in ascertaining whether Hauger had any brothers and sisters.
Campbell testified that on the occasion of his visit to Baker's office, at a time when he and Baker were alone over in the Court House examining the will, he told Baker that Hauger was illegitimate. I cannot accept this testimony. I say this because Campbell failed to bring out this important fact during the Superior Court trials or in answer to interrogatories. Moreover, there would have been no reason for Mr. Baker at that time to go forward with the transaction with such a possibility brought to his attention. Mr. Baker's applied logic and overall testimony leave much to be desired, but I cannot believe that he would have deliberately ignored information of that character.
To recapitulate, I find that Baker and Hauger were proceeding on the erroneous assumption that Hauger was lawful issue. Although Campbell believed that Hauger was illegitimate and that he had an interest in the farm, I find that he failed to so indicate to Baker or Hauger although he had a reasonable opportunity, nay, an invitation to do so. Moreover, he was aware that she was preparing to sell the farm as her own property.
It is unnecessary to resolve the conflict in the evidence as to whether Campbell affirmatively said at the conference that he neither had nor would claim any interest in the farm. I say this because Campbell himself testified that he was silent when he possessed the knowledge mentioned above. Thus, whether he made the statements or whether he merely remained silent, the effect was the same  Hauger and her attorney were permitted to continue to labor under their erroneous assumption. On that basis they sold the farm to plaintiffs who, in the meantime, had offered more money.
In order to raise the purchase price, the Timmons had to borrow from the bank. The bank's attorney, then Mr. Bramhall, thereupon searched the title presumably as the attorney for the bank and for the Timmons. He concluded that, since there were no public records showing who were the lawful issue of William Smith, he could not pass title without some explicit evidence showing the lawful issue. He contacted Mr. Baker as the attorney for the seller and was advised that Mr. Baker had contacted several people and concluded that Hauger was the only lawful issue of William Smith. Mr. Bramhall agreed to pass title if he obtained an affidavit setting forth facts showing that she was the only issue. He also testified, truly I conclude, that he assumed that Hauger was lawful issue. The affidavit was obtained and the loan made and deed executed by Hauger conveying the farm to the plaintiffs. Mr. Bramhall did not contact Campbell directly. This was logical in view of his assumption that Hauger was lawful issue. The plaintiffs proceeded to make substantial improvements on the farm and sold their own home and used the proceeds to satisfy the mortgage on the farm.
All this would have been avoided had Campbell, when afforded the opportunity, mentioned the information he had and the interest he felt he possessed. And it is not *224 as though he did not realize the importance of the information he possessed and its relation to that which Hauger was attempting to do, viz., sell the farm. His refusal to join in the deed does not materially aid his case because admittedly he did not communicate to Hauger or Baker that his refusal was based on his knowledge of Hauger's illegitimacy and his interest in the farm. One might wonder at the logic of even requesting his signature where it was assumed that Hauger was lawful issue. It was Mr. Baker's idea and I believe it was requested without regard to legal logic. As indicated, I have concluded from the testimony that he did not have any doubt about Hauger's legitimacy. A reasonable assumption I believe.
I also conclude that the existing circumstances did not and reasonably viewed could not have put Baker and Hauger and later the plaintiffs on notice as to any question of Hauger's being "lawful issue". Nor did plaintiffs have any convenient or available means of ascertaining the truth concerning Hauger's status.
In the meantime, defendant Campbell was aware of the sale shortly after it was made and was aware that some work was being done on the farm. Also he checked and found that the taxes had been paid. Yet insofar as Hauger and plaintiffs were concerned, Campbell did nothing about the matter until some time in 1949 (well over a year after the sale) when his attorney wrote plaintiffs a letter claiming the farm. There is some suggestion that Campbell may have consulted his attorney in late 1947 but, if he did, nothing was brought to plaintiffs' attention. Additionally, although the life tenant died in 1946 Hauger continued in possession and even though Campbell found out about the death of the life tenant, he did nothing about claiming title.
The question under this state of facts is whether plaintiffs are entitled to invoke the doctrine of equitable estoppel against Campbell. One of the better statements of the doctrine is found in the following excerpts from 3 Pomeroy's Equity Jurisprudence (5th ed.) §§ 802, 803:
"Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel."
* * * * * *
"When all the varieties of equitable estoppel are compared, it will be found, I think, that the doctrine rests upon the following general principle: When one of two innocent persons  that is, persons each guiltless of an intentional, moral wrong  must suffer a loss, it must be borne by that one of them who by his conduct  acts or omissions  has rendered the injury possible."
Although it is admittedly factually distinguishable, I believe the doctrine is well stated in Marvel v. Ortlip, 3 Del. Ch. 9:
"The rule is this;  where one by his acts, declarations or silence, where it is his duty to speak, has induced another person, in reasonable reliance on such acts or declarations, to enter into a transaction, he shall not, to the prejudice of the person so misled, impeach the transaction. He need not have acted fraudulently, or willfully have misled the other party. The object of the rule is not to punish for fraud or falsehood, but to adjust equitably a loss between two parties one of whom must bear it, and it is considered that he should bear it who has caused it. This is a most beneficent principle, for it enforces good faith and gives security *225 to that trustfulness which must enter much into business transactions and it applies itself not to any special class or sort of cases, but to all dealings between man and man. But it must be observed that equity applies this principle of estoppel cautiously and only in a case clear upon the circumstances, because in doing so it interferes with what otherwise is to the party an admitted legal remedy. Hence it is required that the matter of estoppel, i.e., the facts out of which it arises, be clearly established in evidence; and then the facts so established must present these two requisites, viz.:
"1. That the party claiming the estoppel was misled and induced to enter into the transaction upon the faith of the declaration, act or silence of the other, or upon the fact or relation which he seeks to restrain the other party from denying.
"2. That his being so misled was not through his own negligence, or want of attention to proper means of information. * * *"
The authorities on the question of equitable estoppel in cases of a failure to disclose a claim to title or interest are legion. See the long annotations in 50 A.L.R. 668. The better reasoned cases fully sustain the application of the doctrine under the principles announced in the Delaware case above quoted.
Certainly Campbell's silence about his claim and knowledge when he had a reasonable opportunity to speak led Baker and Hauger to continue under the misapprehension that there was no question about Hauger's being lawful issue. Moreover, he was aware that Hauger was going to sell on the basis of that erroneous premise and indeed it was sold to plaintiffs on that premise. It is true that plaintiffs were not present when Campbell failed (at least) to speak out when he was under a duty to do so. Ordinarily, plaintiffs so situated would not be able to invoke an estoppel for want of reliance. But here plaintiffs and their attorney were made aware prior to the consummation of the sale that Campbell had not claimed an interest under the circumstances above mentioned. Moreover, he had left Hauger in possession and was aware that she was going to sell the farm. In view of these facts, inter alia, and the "unusual" factual basis for his claim, I believe plaintiffs are entitled to the benefits of the estoppel.
Thus, I believe the evidence fully shows that the plaintiffs purchased on the assumption that Hauger had title and that this would not have happened had Campbell spoken when he had a duty to speak.
I need merely outline the very substantial prejudice suffered by plaintiffs. They purchased a run-down farm worth very little ($2,500 sale price) and by dint of hard work and the expenditure of substantial sums of money made it a farm once again. Moreover, they paid Hauger for the property and have no indemnity. See 1 A.L.R. p. 1482. Later they paid off the mortgage and paid the taxes. All these things were done before receiving any notice from Campbell's attorney.
My evaluation of the evidence leads me to conclude that this is a most appropriate cause in which to invoke the doctrine of equitable estoppel against the defendant Campbell.
I therefore conclude that a permanent injunction should issue restraining Campbell, his heirs and assigns from asserting or enforcing any right, title or interest in and to the farm against the plaintiffs on the basis of the will of Prettyman H. Smith. It becomes unnecessary to decide the alternative relief question presented.
Order on notice.
NOTES
[1] It appears to be conceded that the one acre reserved will be governed by the decision generally.
[2] The Superior Court transcripts were admitted, in effect, subject to the limitations of Chancery Court Rule 26(d), Del. C.Ann., governing the use of oral depositions.